UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

HAAS OUTDOORS, INC.                                                    PLAINTIFF

v.                                                          Civil No. 1:18-cv-00024-GHD-DAS

DRYSHOD INTERNATIONAL, LLC and
JAMES K. DONOHUE                                                       DEFENDANTS

---

## MEMORANDUM OPINION

The Court today considers multiple motions to dismiss and transfer [10,12,16] filed by Defendants James Donohue and Dryshod, LLC. In this copyright and trademark infringement action, Haas alleges that Defendants James Donohue, on behalf of Dryshod began negotiations to license Haas' popular Mossy Oak Break-Up camouflage pattern for apparel produced by Dryshod. Donohue abruptly ended the negotiations and created his own pattern and trademark. Haas asserts this pattern too closely resembles Break-Up, and that the mark, MOBU, is intended to confuse customers into believing they are buying Mossy Oak products. Haas alleges that Defendants produced apparel bearing the infringing pattern and mark and sold it in the United States.

Haas initially filed suit in the United States District Court for the Western District of Texas for copyright and trademark violations. After filing suit, Haas found some of the Dryshod apparel in this district, where Haas' headquarters lie. Haas purchased some of this apparel, dismissed the Texas suit, and refiled here.

Defendants claim that they initially inquired about licensing Mossy Oak camouflage for use on boots designed by Donohue and Dryshod. At some point, Defendants decided to create their own pattern rather than licensing those owned by Haas. Defendants assert that they do not actually produce or sell any of the allegedly infringing products. Rather, they claim that they act as a "sourcing agent" for unaffiliated distributors by designing apparel and then finding manufacturers

1

to produce the apparel, which is sold directly from the manufacturer to the distributor. It was one of these separate, unaffiliated distributors, Defendants claim, who put the products into Mississippi. Donohue and Dryshod filed motions to dismiss for lack of personal jurisdiction, to dismiss for improper venue, and to transfer venue back to the Western District of Texas.[1]

Haas' claims the relationship between the Defendants and the distributors was a bit more involved. It claims Defendants and the distributors were involved in a joint business venture that warrants imputing any contacts in Mississippi to Donohue and Dryshod. The Court allowed limited discovery on the jurisdictional issues to proceed, and the parties have filed further briefs in support of their positions. The motions are now ready for review. For the reasons set forth below, the Court finds that Haas has failed to make a prima facie showing that personal jurisdiction over Defendants exists and that the case should be transferred.

## Analysis

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)). When the district court rules on the motion without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper." *Id.* (citing *Thompson v. Chrysler Motor Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). The Court takes the allegations of the complaint as true, unless they are controverted by opposing affidavits. *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999) (citing *Bullion v. Gillespie,* 895 F.2d 213, 217 (5th Cir. 1990)). The Court may consider

---

[1] Also pending is a motion to dismiss for failure to state a claim [14]. Because jurisdiction must exist before the Court can reach the merits of any claim, the Court first has to confront the jurisdictional motions.

"affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods." *Isbell v. DM Records, Inc.*, No. CIV.A.3:02-CV-1408-G, 2004 WL 1243153, at *5 (N.D. Tex. June 4, 2004) (citing *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997)).

"A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

The Court first considers whether Mississippi's long-arm statute confers personal jurisdiction of Defendants. The long-arm statute confers jurisdiction over "[a]ny nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein," in one of three ways. Miss. Code Ann. § 13-3-57. First, under the "contract prong", personal jurisdiction attaches to anyone who contracts with a resident of Mississippi where any part of the contract is performed in the state. *Id.* Second, under the "tort prong", personal jurisdiction may be had over anyone who commits "a tort in whole or in part in this state . . ." *Id.* Finally, under the "doing business prong" a non-resident is subject to jurisdiction if it "performs any character of work or service" in Mississippi. *Id.*

Haas contends that jurisdiction is proper over Defendants under the both the "doing business" and "tort" prongs. According, to Haas, Defendants are amenable to personal jurisdiction under the "doing business" prong because Defendants attempted to secure a trademark and

3

copyright license from Haas in Mississippi, and because the "Dryshod Joint Venture" sold infringing products in Mississippi.

Haas also argues that Defendants are amendable to jurisdiction under the "tort prong" because infringing products were sold here and so Haas suffered injury here. *Allred v. Moore & Peterson,* 117 F.3d 278, 282 (5th Cir. 1997) ("Under the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi.") Haas also contends that because it is a Mississippi corporation, any infringement injury occurred in Mississippi.

The Court finds that there is no action taken by the Defendant's themselves that would implicate any of the three avenues of personal jurisdiction under Mississippi's long arm statute.

There are no facts that suggest Defendants themselves "do business" in Mississippi. Defendants do not sell, advertise, or otherwise transact any sort of business within the state. Haas asserts that Defendants license negotiations with Haas constitute doing business in Mississippi. These discussions with Haas took place through emails and phone calls over a four-month period, before Defendants ended licensing efforts. *See* Pl.'s Resp. in Opposition, Ex. 2–3, 5–9 [73-2,73-3, and 73-5 through 73-9] (draft license agreements and emails between Defendants and Haas); Pl's Resp., Ex. 4 James Donohue Dep. at 31–34 [73-4]. The Defendants unconsummated negotiations to secure a license, however, do not constitute "doing business" is in the state. *Cypress Pharm., Inc. v. Tiber Labs., LLC,* 504 F. Supp. 2d 129, 135–56 (S.D. Miss. 2007); *Peterson v. Test Int'l, E.C.,* 904 F. Supp. 574, 579 (S.D. Miss. 1995) ("Moreover, mere negotiations or solicitation . . . by a nonresident defendant from an out-of-state locus is not "doing business" in Mississippi.").

4

Nor is there any action by the Defendant's themselves which could be considered committing any element or part of an element within Mississippi. That Haas resides in Mississippi does not necessarily mean the injury occurred in Mississippi, because the actual injury must be distinguished from "its resultant consequences". *Allred*, 117 F.3d at 281. Thus, in the trademark context, courts have held that the tort occurs where infringing sales are made, not simply where the mark owner resides. *See McRae's, Inc. v. Hussain*, 105 F. Supp. 2d 594, 597 (S.D. Miss. 2000) (collecting cases). The evidence provided bears out that it was Team J, one of Dryshod's distributors, who distributed the infringing products to the stores in Mississippi. Pl.'s Resp., Ex. 16, Team J Sales to Mississippi [73-15].

Beyond the fact that there is no allegation that Dryshod themselves sold infringing products in Mississippi, Haas has shown no evidence that a trademark injury occurred in Mississippi at all. The only retail purchase of the offending goods was made by Haas' employees. February 8, 2018 Receipt [25-3]. But "trademark claims are founded on notions of customer confusion." *721 Bourbon, Inc. v. House of Auth, LLC*, 140 F. Supp. 3d 586, 596 (E.D. La. 2015) (holding there was no personal jurisdiction in trademark case where the only evidence of a sale in forum state was a purchase made by plaintiff). It cannot be said that Haas was "confused as to the source of the products in question." *Id.* It clearly knew the products were not Mossy Oak apparel. That being the only evidence of customer sales in Mississippi, Haas has not shown that any part of the tort occurred here.

With no allegation or proof that Defendants created the pattern or mark in Mississippi or that they themselves sold it in Mississippi, whether the long-arm statute reaches Defendants in this case turns on whether Team J's sales to Mississippi businesses can be imputed to Defendants. It is undisputed that Dryshod and Team J are separate entities that share neither ownership nor

5

management. Haas argues, however, that Defendants, Team J, and another distributor, CFD, were engaged in joint venture such that Team J's activities in Mississippi can be used to assert personal jurisdiction over Defendants.

Whether the long-arm statute is applicable to the relationship between Defendants and the distributors is unclear. The long-arm statute applies to any "nonresident person, firm, general or limited partnership, or any foreign or other corporation" that makes the necessary contacts with Mississippi. Miss. Code Ann. § 13-3-57. The Defendants and its distributors, however, are distinct, separate entities. They do not share ownership or management. By a plain reading of the statute, there is no basis for imputing the distributors actions in connection to Mississippi onto Defendants.

There does appear to be support in this district for the argument that the in-state activities of participants in a joint venture, which the Mississippi Supreme Court has called a "single shot partnership", may suffice to establish jurisdiction over the other out of state participants. *Hults v. Tilman*, 480 So. 2d 1143 (Miss. 1985). The court in *Hanback v. GGNSC Southaven, LLC*, relying on *Hults*, reasoned that "because Mississippi courts view joint ventures as a type of partnership," if the activities of one participant were sufficient to fall under the long-arm statute, then long-arm statute would reach the other participants as well." No. 3:13-CV-00288-MPM, 2014 WL 3530613, at *3 (N.D. Miss. July 15, 2014).

*Hults* described joint ventures as partnerships "limited to specified undertakings for profit, rather than a general and continuing business of a particular kind". 480 So. 2d at 1141. It instructs that, at the least, a joint venture is formed only when the participates engage in some venture through which they intend "to be associated together as general partners, or for the more limited duration of the joint venture." *Id.* at 1143. It is necessary that there be an agreement that the

participants will share in the profits of the venture and will have a right of mutual control. *Id.* at 1142.

The Court finds that at the time the complaint was filed, there existed no agreement that contemplated an intention to form a joint venture and share profits. The course of dealings between the Defendants and its distributors consisted of the distributors purchasing products designed by Defendants and selling them to retailers. But the Defendants and distributors do not share profits from the sale of these products. Defendants receive a flat fee that is due when the products are shipped to the distributors and not based on whether the distributors actually sell the products to retailers. *See* Donohue Dep. at 71-73; Pl.'s Resp., Ex. 18, Team J Invoice [73-17].

Haas points to a draft joint venture agreement the Defendants and distributors were prepared to execute as evidence of a joint venture. Pl.'s Resp., Ex. 10, Draft Dryshod Joint Venture Agreement [73-10]. Defendants and the distributors had negotiated this agreement, but after Haas filed suit, Defendants declined to sign it, fearing executing the agreement would expose the distributors to liability from Haas. *See* Pl.'s Resp., Ex. 22, Feb. 9, 2018 Email [73-21] & Ex. 23, Apr. 9, 2018 Email [73-23]. To the extent this unexecuted agreement is currently in force (and that does not appear to be the case), it does not provide that the sale of products will entitle each party to the profits of those sales. The agreement states that Dryshod and the distributors will work together pursuant to the distribution agreements, and that these distribution agreements will lay out the compensation that Dryshod receive as payment for services provided to the distributors, not as a profit from the sales. *Id.* § 3.1; Pl.'s Resp., Ex. 19, Team J Agreement at 5 [73-18].

Haas suggests that another part of the overall agreement—a phantom equity plan—establishes that the participants would share profits. Pl.'s Resp., Ex. 20, Draft Phantom Equity Plan [73-19]. The Draft Phantom Equity Plan defines the "Phantom Membership Interest" that

each of the distributors would be entitled to as "a *hypothetical* percentage interest in the Company." *Id.* § 2(j) (emphasis added). Whether under Mississippi law, proceeds derived from the sale of the joint venture itself, rather than profits derived from the business contemplated by the joint venture, are "profits" as contemplated by Mississippi joint venture law is unclear. Nonetheless, while Haas points to evidence that the Defendants and the distributors were ready to execute the Draft Joint Venture Agreement and Phantom Equity Plan, Haas does not provide any evidence that Defendants and the distributors actually entered into the agreement. Donohue repeatedly stated that he did not wish to sign the Draft Joint Venture Agreement after Haas filed this suit because he did not want the agreement to have legal effect and expose the distributors to any liability in the present suit. Donohue not wanting the agreement to have legal effect is strong evidence that he did not intend to enter into the agreement.

Profit-sharing is essential to a joint venture. Because there exists no current profit-sharing or an agreement in place to share profits, there is no joint venture. And because there is no joint venture, the Court can find no support in Mississippi law for imputing the distributors Mississippi actions to Defendants. The long-arm statute does not reach Defendants.

The Court need not reach the question of whether the exercise of personal jurisdiction over Defendants would be consistent with due process. The Court will note some evidence suggests a level of involvement by Defendants in the design, production, and distribution of these products and the Dryshod brand that is much more than that of a simple "sourcing agent". Due process may very well permit this Court to assert personal jurisdiction over Defendants. Given, however, that the reach of Mississippi's long-arm statute does not extend to the outer limits of the federal due process, the Court cannot find it has personal jurisdiction over Defendants in this case. *See Allred,*

117 F.3d at 282 (5th Cir. 1997) (citing *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616–17 (5th Cir. 1989) (noting that Mississippi's long-arm statute has a "relatively restrictive scope"))).

### Dismissal or Transfer

"Where a court finds it lacks personal jurisdiction, it may dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(2)" *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013). Alternatively, the court may, pursuant to 28 U.S.C. 1406(a) transfer the case if such a transfer was is in the "interest of justice". *Id.* (citing *Bentz v. Recile*, 778 F.2d 1026, 1028 (5th Cir. 1985)); *see also* 28 U.S.C. § 1631 (where "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action" to any court in which it could have been initially brought).

In *Herman*, the Fifth Circuit reviewed an order of a district court that granted the defendants' motion to dismiss for lack of personal jurisdiction and, in the next sentence, transferred the case to a district court in California pursuant to § 1406(a). 730 F.3d at 463. Like Defendants in this case, the defendants in *Herman* asked the district court to dismiss for lack of personal jurisdiction, dismiss for improper venue, or to transfer venue. *Id.*

The Fifth Circuit first needed to determine whether it had jurisdiction over the matter. That question turned on the effect of the district court's order when the court granted the motion to dismiss. *Id.* at 463. If the order had the effect of dismissing the suit, it was a final, appealable judgment; if the order had the effect of transferring the case, it was not, and no appellate jurisdiction existed. *Id.* The Court stated:

> The district court recognized it was faced with a choice whether to dismiss or transfer. In its order, though, the court did both. We conclude that only one of the orders can be effective. A court's dismissal of an action results in an appealable final order, making a transfer invalid because the court no longer has authority over the matter. Because here the court clearly agreed with the analysis on the personal jurisdiction issue in the Defendants' motion to dismiss,

9

> and because its first order was to grant that motion, we conclude the court validly dismissed the action. This resulted in an appealable final order, making the transfer invalid. We have jurisdiction to hear the appeal pursuant to 28 U.S.C. § 1291.

*Id.* at 463-464 (internal citations omitted). So, if this Court believes it in the interests of justice to transfer the case, then it should deny Defendants' motion to *dismiss*, because the Court cannot both dismiss and transfer the case.

The Court finds that transfer to the Western District of Texas is in the interest of justice in the case. Because Donahue is a Texas citizen who resides in Austin, Texas, and because Dryshod is a Texas entity with its principal place of business in Austin, Texas, both personal jurisdiction and venue lie in the Western District of Texas. Importantly, that court is where Haas first filed its case against Defendants before dismissing and refiling here. "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467, 82 S. Ct. 913, 916, 8 L.Ed.2d 39 (1962)). Accordingly, Defendant's motion to transfer is granted.

## Conclusion

Defendants themselves have not made any requisite contact with Mississippi to support the application of Mississippi's long-arm statute against them. Defendants and their distributors have not yet met the formal requirements to form a joint venture under Mississippi law. Without a formal joint venture, there appears to be no basis under Mississippi law for imputing the activity of the distributors to Defendants. Thus, the Court cannot find that Mississippi's long-arm statute allows the exercise of personal jurisdiction over Defendants. The Court finds that Haas has not made a prima facie case that personal jurisdiction over Defendants exists.

The Court also finds that a transfer is in the interest of justice in this matter. The Court cannot both dismiss and transfer this action. For that reason, Defendant's motion to transfer is granted, and Defendant's motions to dismiss for lack of personal jurisdiction and for lack of venue are denied.

A separate order shall issue.

This the 13th day of November, 2018.

                                                   SENIOR U.S. DISTRICT JUDGE